# AFFIDAVIT

1.        I am a Special Agent and have been employed with the United States Postal Service (U.S. Postal Service), Office of Inspector General (OIG), since November 2018.  I have been a special agent since January 2011. I am currently assigned to the Capital Metro Area Field Office, narcotics team.  As part of my duties, I investigate a wide variety of violations of federal criminal laws, including violations of 18 U.S.C. § 1711 and any other violations that may arise during the course of my normal investigation.

2.        My law enforcement training and experience has included the preparation, presentation and service of criminal complaints, arrest warrants, and search warrants.  I have experience in, and have received training in, but not limited to, general law enforcement, criminal investigations, financial investigations and narcotics investigations.

3.        The affidavit is submitted in support of a summons and criminal complaint charging **PARIS M. PHILPOT-CRUZ ("PHILPOT-CRUZ")** with embezzlement in violation of 18 U.S.C. § 1711.

4.        The facts and information contained in this affidavit are based on my personal knowledge, observations made during the course of this investigation, information provided to me by other law enforcement personnel, information provided by witness, and/or a review of records and documents.  I have not included every facts known to me about this investigation, but rather only those facts that are sufficient to establish probable cause.

5.        **PHILPOT-CRUZ** was employed by the U.S. Postal Service, Forestville Post Office as a PSE Sales Services & Distribution Associate since January 11, 2014.  **PHILPOT-CRUZ**'s responsibility was primarily working at the counter, which includes selling stamps, mailing packages and letters, cashing and issuing money orders.

6.        On April 5, 2019, I received information from the manager of customer service at the Forestville Post Office that a customer ("V-1") had complained about an unauthorized transaction in the sum of $885.00, made on her debit card account from the post office.

7.        V-1 reported that on April 2, 2019, V-1 purchased a U.S. Postal Service money order from **PHILPOT-CRUZ** for $885.00.  V-1 left the post office with the money order, but made a mistake on the "payee" field, and returned to the post office to obtain a new money order from **PHILPOT-CRUZ**.  **PHILPOT-CRUZ** issued V-1 the new money order and in addition, charged V-1 for a second money order valued at the same amount, $885.00.  **PHILPOT-CRUZ** did not credit the amount for the first, invalid money order.  At the time of issuance, V-1 was unaware of the second charge because **PHILPOT-CRUZ** did not give her a receipt for the transaction.  On or about April 5, 2019 V-1 realized her account was debited the additional $885.00, which prompted her to make the complaint.

8.        On April 11, 2019, I reviewed the video footage of the transactions. The video footage showed that on Aril 2, 2019 at approximately 11:59 a.m., V-1 purchased three (3) money orders and two (2) pre-stamped envelopes from **PHILPOT-CRUZ**. It also showed **PHILPOT-**

**CRUZ** making a circle at the bottom portion on the receipt before giving it to the customer. The mark shown on the video, matches the mark shown on the receipt, which was provided by the V-1.

9.      On April 11, 2019, I also reviewed the video footage surrounding the exchange of the money order. The footage showed **PHILPOT-CRUZ** re-issuing the initial money order, but it also showed **PHILPOT-CRUZ** creating another, separate money order, which **PHILPOT-CRUZ** placed as far back as possible in her drawer.   **PHILPOT-CRUZ** was also observed folding the new money order, and then moving it from one drawer to another, placing it as far back as possible, where it would not be easily visible.

10.      **PHILPOT-CRUZ** correctly treated the returned, erroneously filled out money order as a cashed money order, and it went through normal Federal Reserve channels. V-1 negotiated her replacement money order, which also went through normal Federal Reserve channels.

11.      On April 16, 2019, I obtained a copy of both money orders from the Federal Reserve, along with the unauthorized money order kept by **PHILPOT-CRUZ.**  I determined that on April 4, 2019, the unauthorized money order for $885.00, which I had seen **PHILPOT-CRUZ** put into her drawer after the April 2 transaction, was cashed at another U.S. Post Office. That money order was blank, with the exception of the amount of $885.00 printed on the front. There was nothing in the "Pay to the order of" space, and it was unsigned.  On the rear of the money order was a signature that was unrecognizable.

12.      On April 30, 2019, I interviewed the postal clerk ("W-1") who cashed the blank money order. W-1 told me that on April 4, 2019, a man came in with the money order for $885. W-1 stated that the customer requested a money order for $580 and the rest of the $885 in cash.   I tracked the $580 money order issued to Forest Lakes Apartments in Lanham, MD, who negotiated it at the bank for payment.  The face of the $580 money order showed that the tenant whose name was listed on the money order was the same person who presented the money order in person to the apartment complex for rent.  Forest Lakes Apartments did not make a record of the date the money order was presented, but it was some time before April 18, 2019. According to Forest Lakes Apartment management, that tenant had moved out on April 30, 2019.

13.      I received information from a third-party source that **PHILPOT-CRUZ** had recently moved from an unidentified apartment in Lanham, MD.  I also learned that a Mercedes-Benz belonging to **PHILPOT-CRUZ** had been towed from Forest Lakes Apartments by RPM Towing, the contract towing company for the apartment complex.  Documents from RPM Towing confirmed that a 2001 Mercedes Benz registered to **PHILPOT-CRUZ** was towed from Forest Lakes Apartments on April 5, 2019 at 3:27 a.m. for displaying an improper license tag. The records I reviewed showed that later that morning, **PHILPOT-CRUZ** paid the $175 towing fee.

14.      The same Mercedes Benz was towed again from the same general location on April 6, 2019, at 1:47 a.m., for failure to display a license plate.  At 3:12 a.m., **PHILPOT-CRUZ** paid the $175 towing fee.  The fact that **PHILPOT-CRUZ**'s car was towed twice in the

middle of the night from Forest Lakes Apartments leads me to believe she was staying there and was associated with the man who cashed the unauthorized money order that the defendant had fraudulently issued.

Based on the foregoing, I respectfully submit that there is probable cause to believe that the defendant did embezzle funds by fraudulently failing to account for and converting to her own use monies that came into her possession under color of her employment with the United States Postal Service.  Therefore, I respectfully request that a summons and criminal complaint be issued for the defendant.

S.A. Barrington Cameron
USPS OIG

Sworn to before me this 13th day of September, 2019.

Gina L. Simms
United States Magistrate Judge